IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>JEFFREY SCOTT WELLS )<br>) | NO. 3:24-00216<br><br>18 U.S.C. § 371<br>18 U.S.C. § 1519<br>18 U.S.C. § 1623 |

# INDICTMENT

THE GRAND JURY CHARGES:

At all times material to this Indictment, unless otherwise specified:

## BACKGROUND

1.      Individual 1 was the Deputy Commissioner and Chief Financial Officer ("CFO") for the Tennessee Department of Corrections ("TDOC") from in or about 2012 until in or about March 2020.

2.      In 2019, Company A provided behavioral health services to TDOC inmates pursuant to a contract signed in or about 2016. This contract was ultimately extended until 2020.

3.      In anticipation of this contract's expiration, on or about August 7, 2019, the State of Tennessee issued a Request for Proposal (the "Original RFP") for a new TDOC behavioral health services contract. Pursuant to RFPs, prospective vendors could provide the State of Tennessee with bids for the behavioral health services contract.

4.      As part of the Original RFP, the State of Tennessee attached a *pro forma* contract that the prevailing bidder would be required to sign. The Original RFP indicated that the prevailing bidder would be obligated to post a liability bond in the amount of $1 million, but the *pro forma*

contract indicated that the prevailing bidder would be obligated to post a liability bond in the amount of $120 million.

5. After identifying the discrepancy, on or about February 25, 2020, the State of Tennessee issued a second RFP for the new behavioral health services contract (the "Revised RFP") indicating in both the RFP itself and the *pro forma* contract that the liability bond amount would be equal to the maximum amount of the contract.

6. The State of Tennessee received qualifying bids from several prospective vendors and, on or about July 16, 2020, issued a notice of its intent to award the new behavioral health services contract to the Tennessee affiliate of Company B. The total contract amount for the behavioral health services contract was ultimately $123,513,819.

7. From at least in or about 2018 until on or about February 11, 2021, the defendant, **JEFFREY SCOTT WELLS**, was a Vice President of a Company B affiliate.

8. From at least in or about September 2018 until at least in or about February 2020, Individual 1 used his personal email account to provide confidential TDOC information relating to the Original RFP and the Revised RFP to **JEFFREY SCOTT WELLS**. For example:

    a. On or about September 20, 2018, Individual 1 sent a draft of the Original RFP to **WELLS**.

    b. On or about March 21, 2019, Individual 1 sent a draft of the Original RFP, with confidential comments from the State of Tennessee's attorney, to **WELLS**.

    c. On or about May 22, 2019, Individual 1 sent a draft of the Original RFP to **WELLS** and others, writing, "As promised."

    d. On or about January 3, 2020, Individual 1 sent a draft of the Revised RFP to **WELLS**.

    e. On or about January 15, 2020, Individual 1 sent **WELLS** and another Company B employee a memo from Company A to TDOC management which summarized Company A's behavioral health services work for December 2019.

9. Individual 1 also used the messaging program WhatsApp to send confidential TDOC information relating to the Original RFP to **JEFFREY SCOTT WELLS**. For example:

    a. On or about June 12, 2019, Individual 1 sent **WELLS** a screenshot of the TDOC Weekly Tracking Spreadsheet, which included notes regarding the progress of the Original RFP.

    b. On or about June 28, 2019, Individual 1 sent **WELLS** a letter from Company A to Individual 1 which discussed ongoing negotiations between TDOC and Company A regarding a potential contract extension for the behavioral health services contract.

    c. On or about July 12, 2019, Individual 1 sent **WELLS** a spreadsheet which identified the names of individuals employed pursuant to Company A's behavioral health services contract, as well as those employees' job titles and operating hours.

10. Additionally, on or about October 29, 2019, Individual 1 and **JEFFREY SCOTT WELLS** used WhatsApp to exchange a copy of the indictment in *United States v. McCabe*, No. 2:19-cr-00171 (E.D. Va. Oct. 24, 2019). The *McCabe* indictment alleged, among other things, that the Sheriff of Norfolk "forwarded [the Sheriff's Office's legal counsel's] email containing the draft RFP through two private email accounts and then to" an officer of a company which contracted with the Sheriff's Office.

11. On or about March 1, 2020, the Georgia affiliate of Company B hired Individual 1 as its Vice President of Operations, reporting to **JEFFREY SCOTT WELLS**. This position was created specifically for Individual 1. It was not advertised to other candidates and neither Individual 1 nor any other candidates were interviewed before he was hired.

12. On or about October 19, 2020, Company A filed a civil complaint relating to the Original RFP and the Revised RFP in the United States District Court for the Middle District of Tennessee. Among others, Company A named Company B and the State of Tennessee as defendants.

13. By no later than in or about February 2021, senior leadership of Company B became aware that Individual 1 had provided confidential TDOC information to **JEFFREY SCOTT WELLS** in connection with the Original RFP and the Revised RFP. On or about February 11, 2021, the CEO of Company B terminated both Individual 1 and **WELLS**.

14. On or about February 18, 2021, Company A served a subpoena for documents and a deposition notice on each of Individual 1 and **JEFFREY SCOTT WELLS**. Among other things, the subpoenas required Individual 1 and **WELLS** to produce, on March 8, 2021, "All Documents and Communications that refer to, relate to and/or reflect any Communications between You and any other present or former employee of TDOC . . . regarding in any way the [Original RFP and Revised RFP]."

## COUNT ONE

15. Paragraphs 1 through 14, above, are re-alleged and incorporated by reference as though fully set forth herein.

## THE CONSPIRACY

16. Beginning no later than on or about February 18, 2021, and continuing thereafter until at least on or about March 11, 2021, in the Middle District of Tennessee and elsewhere, Individual 1 and **JEFFREY SCOTT WELLS** did knowingly and intentionally conspire, confederate, and agree to commit offenses against the United States, that is:

    a. to knowingly alter, destroy, mutilate, conceal, cover up, and falsify, a record and document, including WhatsApp messages and emails, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, that is, possible violations of Title 18, United States Code, Sections 1343, 1346,

4

and 1951(a), a matter within the jurisdiction of the Federal Bureau of Investigation, and in relation to and contemplation of such matter or case, in violation of Title 18, United States Code, Section 1519; and

b. to commit perjury in the matter of *Corizon v. Wainwright, et al.*, 3:20-cv-00892 (M.D. Tenn.), in violation of Title 18, United States Code, Section 1623.

Object of the Conspiracy

17. The purpose of the conspiracy was to conceal the fact that Individual 1 had provided confidential TDOC information to **JEFFREY SCOTT WELLS** before and after the Original RFP.

Manner and Means of the Conspiracy

18. The manner and means used to accomplish the conspiracy's objectives included false testimony and the destruction of relevant documents.

Overt Acts

19. In furtherance of the conspiracy, and to achieve its goals and objectives, Individual 1 and **JEFFREY SCOTT WELLS** committed and caused to be committed the following overt acts, among others, in the Middle District of Tennessee and elsewhere:

20. On or about the day he was served with a subpoena by Company A, Individual 1 created an account on Quora, an online question-answer platform, and visited the following sites:

    a. https://www.quora.com/unanswered/If-the-police-seize-my-phone-can-they-still-recover-all-of-my-WhatsApp-messages-even-if-I-deleted-the-app

    b. https://www.quora.com/How-is-the-police-able-to-backtrackmessages-on-WhatsApp-even-though-they-are-end-to-end-encrypted-Is-WhatsApp-cheating-people-by-stating-that-the-messages-are-encrypted?top_ans=240742156

    c. https://www.quora.com/According-to-WhatsApp-chats-between-two-people-are-end-to-end-encrypted-How-are-they-accessed-by-NCBCBI-or-police-

5

Even-WhatsApp-cannot-read-them-How-do-these-agencies-get-those-chats?top_ans=240243301

d. https://www.quora.com/unanswered/If-I-delete-WhatsApp-will-my-messages-be-deleted-permanently-or-could-they-be-retrieved-from-a-server-if-the-company-was-legally-required-to-provide-them

e. https://www.quora.com/How-do-I-delete-WhatsApp-chats-permanently?top_ans=85717595

21. In or about February 2021, Individual 1 also began using a specialized program to delete his personal email account's communications with **JEFFREY SCOTT WELLS** that were responsive to the subpoena from Company A.

22. On or about February 19, 2021, both Individual 1 and **JEFFREY SCOTT WELLS** obtained new cell phones, which they used to communicate with each other through at least the day of their depositions.

23. On or about March 11, 2021, beginning at approximately 9:00 a.m., Individual 1 was deposed via videoconference. He testified falsely that he "had no recollection" of sending **JEFFREY SCOTT WELLS** documents relating to the Original RFP while employed by TDOC. The deposition of Individual 1 concluded at approximately 12:30 p.m.

24. Approximately two minutes after his deposition concluded, Individual 1 called and spoke with **JEFFREY SCOTT WELLS**.

25. Approximately one hour after the deposition of Individual 1 concluded, **JEFFREY SCOTT WELLS** was deposed via videoconference. In response to being asked "the last time [he] . . . communicated with [Individual 1] in any way," **WELLS** falsely testified, "It's been a few weeks. Shortly after we both were terminated. Just checking on his family."

6

26. In response to being asked, "Do you believe you had any WhatsApp correspondence with [Individual 1] related to the Behavioral Health Services RFP?," **WELLS** falsely testified, "I do not believe that I did."

27. In response to being asked, "Did you have communications with [Individual 1] about the 2019 RFP while the solicitation was ongoing?," **WELLS** falsely testified, "No."

All in violation of Title 18, United States Code, Section 371.

### COUNT TWO

28. The grand jury re-alleges and incorporates paragraphs 1 through 14 and 24 through 27

29. On or about March 11, 2021, in the Middle District of Tennessee, **JEFFREY SCOTT WELLS**, while under oath as a deposition witness in a case then pending before the United States District Court for the said District, entitled, *Corizon v. Wainwright, et al.*, 3:20-cv-00892, knowingly did make a false material declaration, to wit:

> Q: When was the last time you talked to [Individual 1] in any way?
>
> A: It's been a few weeks. Shortly after we both were terminated. Just checking on his family.

30. As he then and there well knew and believed, that testimony was false in that, on or about March 11, 2021, before beginning his testimony, **JEFFREY SCOTT WELLS** had talked with Individual 1.

All in violation of Title 18, United States Code, Section 1623.

### COUNT THREE

31. The grand jury re-alleges and incorporates paragraphs 1 through 14 and 24 through 27.

32. On or about March 11, 2021, in the Middle District of Tennessee, **JEFFREY SCOTT WELLS**, while under oath as a deposition witness in a case then pending before the United States District Court for the said District, entitled, *Corizon v. Wainwright, et al.*, 3:20-cv-00892, knowingly did make a false material declaration, to wit:

> Q: Did you have communications with [Individual 1] about the 2019 RFP while the solicitation was ongoing?
>
> A: No.

33. As he then and there well knew and believed, that testimony was false in that **JEFFREY SCOTT WELLS** and Individual 1 corresponded using, among other things, WhatsApp and email, about the 2019 RFP while the solicitation was ongoing.

All in violation of Title 18, United States Code, Section 1623.

A TRUE BILL



FOREPERSON

THOMAS J. JAWORSKI
ACTING UNITED STATES ATTORNEY

TAYLOR J. PHILLIPS
M. SCOTT COLE
ASSISTANT UNITED STATES ATTORNEYS

8